**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elaine Quintana,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-17-03836-PHX-BSB<br><br>**ORDER** |

Plaintiff Elaine Quintana seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits under the Social Security Act (the "Act"). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Rule 16.1 of the Local Rules of Civil Procedure. As discussed below, the Court vacates the Commissioner's decision and remands for further proceedings.

**I.    Procedural Background**

In October 2013, Plaintiff applied for Social Security Disability Insurance ("SSDI") alleging a disability onset date of October 19, 2011.[1] (Tr. 145-46.)[2] Plaintiff alleged disability based on neuropathy in her hands and feet, weakness in her wrists, chronic joint

---

[1] Plaintiff was last insured for SSDI benefits on June 30, 2016. (Tr. 162.) A claimant for SSDI benefits must establish disability prior to the date last insured. *Lester v. Chater*, 81 F.3d 821, 825 (9th Cir. 1996).

[2] Citations to the "Tr." are to the certified administrative transcript of record. (Doc. 19.)

pain in her fingers, wrists, elbows, knees and hips, shoulder pain, blurry vision, and teary eyes. (Tr. 211.) Plaintiff alleged that all of these conditions were caused by the medication she took during chemotherapy. (*Id.*) She also alleged fatigue. (Tr. 27.) After Plaintiff's application was denied on initial review, and on reconsideration, she requested a hearing before an administrative law judge ("ALJ"). (Tr. 22.) Following a hearing the ALJ issued a decision finding Plaintiff not disabled under the Act. (Tr. 22-38.) Plaintiff requested review of the ALJ's decision. (Tr. 1-7.) The Social Security Appeals Council denied Plaintiff's request for review and Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**II.  Administrative Record**

The administrative record includes medical records pertaining to the history of diagnoses and treatment of Plaintiff's alleged impairments. The record also includes several medical opinions. The Court discusses the relevant records and opinions below

**A.  Medical Treatment Records**

In December 2011, Plaintiff was diagnosed with breast cancer. (Tr. 366-67.) Oncologist Ian K. Komenka, M.D., prescribed six cycles of intravenous chemotherapy. (Tr. 367.) Plaintiff was also treated with radiation. (Tr. 673.) In February 2012, a liver biopsy revealed that Plaintiff had severe liver disease. (Tr. 401-02.) In April 2012, Plaintiff's treating gastroenterologist, Abdul Nadir, M.D., noted that Plaintiff was currently receiving chemotherapy and had several side effects including fatigue. (Tr. 468.) In May 2012, Colan Kennelly, M.D., noted that Plaintiff had "puffy eyes with excess tearing for 3 weeks," which was a symptom of conjunctivitis but was also a side effect of the chemotherapy drug Taxotere. (Tr. 311.) In June 2012, Plaintiff reported that she was exhausted from chemotherapy and wanted to postpone breast surgery for a month. (Tr. 504.)

In July 2012, Plaintiff had surgery, including a right wire-guided lumpectomy. (Tr. 522.) In February 2013, after Plaintiff completed chemotherapy, Dr. Nadir prescribed hepatitis treatment. (Tr. 607, 661.) After her chemotherapy treatment ended, Plaintiff also

continued to receive Herceptin intravenously for one year. (Tr. 458-59, 519.) In March 2013, while Plaintiff was undergoing hepatitis treatment, Charlotte Gurule, M.D., noted that Plaintiff had chronic abdominal pain, lymphedema of the right arm, right shoulder and middle back pain, and ongoing numbness in the hands and feet. (Tr. 304.) Plaintiff reported that she frequently dropped things due to numbness in her hands. (*Id*.) In May 2013, Plaintiff told Dr. Gurule she felt weak and lightheaded and had severe skin itching and fatigue. (Tr. 300.) That same month, Plaintiff was hospitalized and had a blood transfusion for severe anemia. (Tr. 328-31.) In May 2013, Dr. Nadir decreased Plaintiff's dose of hepatitis medication, Ribavivrin, due to dizziness, shortness of breath, and weakness. (Tr. 686-90.) In August 2013, Dr. Nadir noted Plaintiff had had 21 shots of the hepatitis medication Pegasys, and was "still experiencing nausea, vomiting and headache and fatigue." (Tr. 724.)

In October 2013, Sabrina Pojar, D.O., noted that Plaintiff had joint pain "most likely from osteoarthritis," but medications used to treat hepatitis "have a side effect of arthritis and arthralgia." (Tr. 953.) On examination, Dr. Pojar observed Plaintiff had bilateral finger joint swelling and bilateral knee crepitus. (Tr. 956.) In November 2013, Dr. Nadir noted Plaintiff was no longer receiving treatment for hepatitis, but she had abdominal pain and elevated liver function levels on laboratory testing. (Tr. 748-49.)

In January 2014, rheumatologist Stuart Posner, M.D., noted that Plaintiff had ongoing "generalized joint pain," "general fatigue," and an x-ray suggested probable degenerative arthritis in the knees. (Tr. 779.) Dr. Posner noted that Plaintiff had mild compression tenderness of the finger joints, mild crepitation in both knees, and a restricted range of motion of the left shoulder. (*Id*.) In April 2014, Dr. Pojar noted that Plaintiff's pain was "uncontrolled." (Tr. 976.) Plaintiff reported muscle cramps in her jaw, right foot, arms, and back. (*Id*.) She reported that muscle cramps were worse with stretching or walking. (*Id*.) She also had continued polyarthalgias. (*Id*.) In May 2014, Plaintiff reported to Duane Mitzel, M.D., that she had tearing, eye discharge, burning eyes, and blurred vision. (Tr. 826-27.) In July 2014, Plaintiff reported to Dr. Pojar that she had "diffuse

pain, muscle cramping, and occasional numbness and tingling in hands and feet." (Tr. 966.) Dr. Pojar noted that Plaintiff had undergone chemotherapy and that paraesthesias was a side effect. (*Id.*) Plaintiff reported decreased activity. (*Id.*)

In December 2014, Zachary Ortiz, M.D., noted that Plaintiff reported pain in the groin, legs, arms, stomach, and back, that "appears consistent with neuropathy of unclear etiology, chemo side effect, depression." (Tr. 887.) In May 2015, Dr. Pojar noted Plaintiff had a normal vision screen and eye examination but had "nonspecific color and flashes of light in both eyes." (Tr. 979.) In August 2015, Dr. Nadir noted that Plaintiff had stopped treatment for hepatitis over one year ago but she continued to report fatigue and joint pain. (Tr. 1002.) In October 2015, an abdominal ultrasound revealed that Plaintiff had hepatic cirrhosis. (Tr. 1092.)

### B. Medical Opinion Evidence

#### 1. Non-Examining Physicians

As part of the initial state agency determination, in February 2014, Allen Radkowsky, M.D., opined that Plaintiff retained the physical abilities to perform light work with some restrictions, including occasionally climbing ladders, ropes, and scaffolds, and occasionally crawling. (Tr. 65-67.) As part of the reconsideration determination, in October 2014, Michael Keer, D.O., assessed the same physical abilities and restrictions. (Tr. 82-85.)

#### 2. Treating Physician Opinion

In October 2015, Dr. Nadir completed a Medical Assessment of Ability to do Work-Related Physical Activities. (Tr. 984-85.) Dr. Nadir opined that Plaintiff could sit, stand, or walk less than two hours in an eight-hour day. (Tr. 984.) Dr. Nadir opined that Plaintiff needed to change positions and rest every ten to fifteen minutes. Dr. Nadir opined that Plaintiff's "symptoms" caused moderately severe limitations, defined as limitations that would result in being "[o]ff task 16-20% of an 8-hour day." (Tr. 985.) The form asked Dr. Nadir to identify those symptoms by "(circl[ing] all that apply) pain, fatigue, dizziness, headaches, other." (*Id.*) Dr. Nadir did not circle any of the listed symptoms or identify

any "other" symptoms. (*Id.*) Dr. Nadir opined that Plaintiff's "medical condition" would cause her to miss work four to five days per month. (*Id.*) Dr. Nadir indicated that he had provided or supervised Plaintiff's treatment and that he has considered and reviewed his treatment notes, records from other providers, laboratory reports, and Plaintiff's responses to treatment. (*Id.*) He indicted "no" in response to whether "the limitations result from objective, clinical, or diagnostic findings which have been documented either by [him], or elsewhere in the patient's medical records." (*Id.*)

### III. The Administrative Hearing

Plaintiff was fifty-five years old at the disability onset date and fifty-nine years old as of the date of the administrative hearing. (Tr. 41, 43.) Plaintiff had a high school education and her past relevant work included work as a "clerk," a light, skilled job. (Tr. 30-31.)

Plaintiff testified at the administrative hearing, but the ALJ did not call a vocational expert to testify. (*See* tr. 39.) At the administrative hearing Plaintiff testified that while undergoing treatment for breast cancer, she was "constantly sick, very fatigued," and "had issues with walking." (Tr. 45.) Plaintiff also had "problems with [her] legs and [her] hands." (*Id.*) Plaintiff stated that a few months after her breast cancer treatment ended, she started treatment for advanced liver fibrosis. (Tr. 46-47.) Plaintiff completed five months of that treatment but could not finish the whole course of treatment. (Tr. 47.) Plaintiff continued to have significant fatigue following her treatment for breast cancer and liver problems. (Tr. 47-48.) Plaintiff testified that the fatigue was "like somebody took all [her] energy. [She couldn't] function [and] need[ed] to just go lay down." (Tr. 48, 49.) Plaintiff stated that she experienced daily fatigue that required her to nap for two to three hours. (*Id.*)

Plaintiff testified that she also had joint pain in her hands, knuckles, shoulders, knees, and feet. (Tr. 50.) Plaintiff stated that the pain in her hands caused her to drop objects. (Tr. 51.) Plaintiff also had ductal tearing as a result of chemotherapy and "it look[ed] like [she was] always crying," and made her vision blurry. (Tr. 52.) Plaintiff

testified that three or four times a month she got headaches that usually lasted four hours and that made her need to lie down. (Tr. 53-54.)

## IV. The ALJ's Decision

A claimant is considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (providing a nearly identical standard for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### A. The Five-Step Sequential Evaluation Process

In the first two steps, a claimant seeking disability benefits must demonstrate (1) that she is not presently engaged in a substantial gainful activity, and (2) that her medically determinable impairment or combinations of impairments is severe. 20 C.F.R. §§ 404.1520(b), 404.1520(c), 416.920(b), 416.920(c). If a claimant meets steps one and two, there are two ways in which she may be found disabled at steps three through five.

At step three, the claimant may prove that her impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(d). If claimant can prove such an impairment, the claimant is presumptively disabled within the meaning of the Act. (*Id.*) If not, the ALJ determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see, e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) ("The burden of proof is on the claimant at steps one through four but shifts to the Commissioner at step five."). If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a); *see, e.g.*, *Garrison*, 759 F.3d at 1011.

### B. The ALJ's Application of the Five-Step Evaluation Process

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 19, 2011—the alleged disability onset date. (Tr. 24.) At step two, the ALJ found that Plaintiff had the following severe impairments: "status post breast cancer, osteoarthritis, headaches, hepatitis C, neuropathy, hypertension, and obesity. (20 CFR 404.1520(c))." (*Id.*) At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. Part 404 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. 25.)

The ALJ next determined Plaintiff's RFC. (Tr. 26.) The ALJ concluded that Plaintiff had the RFC to "perform light work as defined in 20 C.F.R. § 404.1567(B), with lifting and carrying up to 20 pounds occasionally and 10 pounds frequently." (*Id.*) The ALJ also found that, in an eight-hour day, Plaintiff could "stand and/or walk six hours and sit six hours." (*Id.*) She could "frequently climb ramps or stairs, stoop, kneel, or crouch, but only occasionally crawl and climb ladders, ropes, and scaffolds." (*Id.*) Plaintiff "should avoid concentrated exposure to extreme heat and cold concentrated [and] exposure to hazards such as machinery and heights." (*Id.*)

At step four, the ALJ concluded that Plaintiff could perform her past relevant work as a "clerk." (Tr. 30.) Alternatively, the ALJ found that based on Plaintiff's age, education, and RFC, she could perform "other jobs that exist in significant numbers in the national

economy." (Tr. 31.) Therefore, the ALJ concluded Plaintiff had not been under a disability as defined in the Act from the onset date through the date of the ALJ's decisions. (Tr. 33.) Accordingly, the ALJ denied Plaintiff's application for disability benefits. (*Id.*)

## V. Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

In determining whether substantial evidence supports a decision, the court considers the record as a whole, and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted). The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

Furthermore, the court applies the harmless error doctrine when reviewing an ALJ's decision. Thus, even if the ALJ erred, the decision will not be reversed if the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (an error is harmless so long as there remains substantial

evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (stating that "[a] decision of the ALJ will not be reversed for errors that are harmless.").

**VI.   Plaintiff's Claims**

Plaintiff argues that the ALJ erred by (1) discounting treating physician Dr. Nadir's opinion, (2) discounting Plaintiff's symptom testimony without providing clear and convincing reasons that were supported by substantial evidence, and (3) determining that Plaintiff could perform her past relevant work as a clerk based on a job description that did not match the job Plaintiff performed or how the job of clerk was generally performed in the national economy. (Doc. 20 at 1.) Plaintiff argues that these errors were harmful. (*Id*.) The Commissioner disputes the first two claims but admits that the ALJ erred at steps four and five of sequential evaluation process. (Doc. 25.) Plaintiff asks the Court to remand for benefits. (Doc. 20.) The Commissioner asks for remand for further proceedings. (Doc. 25.)

**A.   Medical Source Opinion Evidence**

In weighing medical source opinion evidence, the Ninth Circuit distinguishes between three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. Generally, more weight is given to a treating physician's opinion. *Id.* The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion. *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than opinions from treating or examining physicians. *Lester*, 81 F.3d at 831. Although an ALJ

generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion . . . ." *Orn*, 495 F.3d at 631; *see Garrison*, 759 F.3d at 1012 n.11.

### 1. The ALJ Erred in Discounting Dr. Nadir's Opinion

On a 2015 assessment of ability to do work-related physical activity, Dr. Nadir identified Plaintiff's impairments as "advanced fibro, obesity 36 BMI, and breast cancer." (Tr. 984.) Dr. Nadir opined that Plaintiff could sit, stand, or walk less than two hours in an eight-hour day. (*Id.*) Dr. Nadir opined that Plaintiff needed to change positions and rest every ten to fifteen minutes. Dr. Nadir opined that Plaintiff had "symptoms" that caused moderately severe limitations, defined as limitations that would result in being "[o]ff task 16-20% of an 8-hour day." (Tr. 985.) Dr. Nadir also opined that Plaintiff's "medical condition" would cause her to miss work four to five days per month. (*Id.*) The ALJ assigned Dr. Nadir's opinion little weight. (Tr. 28-29.) The Commissioner asserts that the ALJ gave specific and legitimate reasons for discounting Dr. Nadir's opinion but does not specifically address Plaintiff's arguments related to that opinion. (Doc. 25 at 8.)

#### a. Checklist Opinion

The ALJ noted that Dr. Nadir's opinion was a "checklist" opinion. (*Id.*) However, the ALJ did not state that he was discounting Dr. Nadir's opinion because it was in the form of a "checklist." (*Id.*) Accordingly, the Court does not consider the form of Dr. Nadir's opinion as part of the ALJ's rationale for discounting that opinion.

#### b. Lack of Evidence of Restrictions

In discounting Dr. Nadir's opinion, the ALJ stated that considering Plaintiff's "allegations of totally disabling symptoms one might expect to see some indication in the

treatment records of restrictions placed on [Plaintiff] by the treating doctor." (Tr. 29.) The ALJ stated that the medical records revealed that the treating doctor "never ordered or even suggested to [Plaintiff] that she limit the time she stood or sat, or the amount she lifted." (*Id.*) Plaintiff argues that this was not a legally sufficient reason for discounting Dr. Nadir's opinion because the main function of medical records is to provide treatment, not to provide evidence for a disability determination. (Doc. 20 at 12 (citing *Orn*, 495 F.3d at 634).)

An ALJ may properly reject a treating physician's opinions when the physician's conclusions do not "mesh" with his objective data or history. *See Tommasetti*, 533 F.3d at 1041. The failure of the treatment notes to provide a basis for the functional restrictions opined is a specific and legitimate reason to discredit that opinion. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating doctor's opinion properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed on [claimant]").

As the ALJ noted, in Dr. Nadir's treatment notes, there is no indication that Dr. Nadir recommended or ordered Plaintiff to limit the time she stood or sat, or how much she lifted. (Tr. 688-91, 724-28, 748, 1002-005.) The ALJ, however, did not explain why the absence of these specific restrictions undermined Dr. Nadir's opinions that Plaintiff had "symptoms" that caused moderately severe limitations, defined as limitations that would result in being "[o]ff task 16-20% of an 8-hour day," or that her medical conditions would cause her to miss work four to five days a month. (Tr. 985.) The ALJ was required to articulate his reasons for discounting any portion of the treating physician's opinion. *See Garrison*, 759 F.3d at 1012. The ALJ's observation that Dr. Nadir did not recommend or order restrictions on sitting, standing, and lifting did not explain why the ALJ discounted Dr. Nadir's opinion in its entirety. Therefore, this rationale was not a legally sufficient reason for discounting Dr. Nadir's opinion.

### c. Contradiction with Medical Records

The ALJ also found that Dr. Nadir's opinion contradicted his own medical records, which noted that Plaintiff's "hepatitis C was cured and that her abdominal pain improved

after taking over-the-counter medication." (Tr. 28 (citing Admin. Hrg. Ex. 8F at 4).) The ALJ also noted that Dr. Nadir's treatment notes indicated that Plaintiff reported "feeling better" after receiving Herceptin treatment. (Tr. 29 (citing Admin. Hrg. Ex. 5F at 247).)

Plaintiff does not dispute that record evidence indicates that her hepatitis C was cured but argues that such evidence is not inconsistent with Dr. Nadir's opinion because Plaintiff does not allege disability based on that impairment. (Doc. 20 at 11.) Rather, she alleges disability based on side effects from chemotherapy and treatment for hepatitis C that persisted after treatment ended. (*Id.*) The Court agrees that evidence that Plaintiff's hepatitis C or abdominal pain had been resolved does not provide substantial evidence in support of the ALJ's conclusion that Dr. Nadir's opinion was inconsistent with his medical records.

Plaintiff also asserts that a notation in a November 2012 treatment note that Plaintiff was "feeling better" does not undermine Dr. Nadir's opinion. (Doc. 20 at 12.) The Court agrees that this single treatment note in which Plaintiff reported that she felt better at one appointment in 2012 is not a legally sufficient reason for discounting a treating physician's opinion. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (stating that evidence that a claimant has been "responding to treatment . . . does not provide a clear and convincing reason for disregarding" her testimony because "[n]o physician opined that any improvement would allow [her] to return to work."). For these reasons, the Court concludes that the ALJ erred in discounting Dr. Nadir's opinion.

### B. Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective complaints. (Doc. 20 at 16-21.) The Commissioner defends the ALJ's assessment of Plaintiff's symptom testimony. (Doc. 25 8-9.) As discussed below, the Court finds that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony.

An ALJ uses a two-step analysis to evaluate a claimant's subjective symptom testimony. *Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "can reasonably produce the degree of symptom alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). At this second evaluative step, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), or if the ALJ offers "clear and convincing reasons" for discounting the symptom testimony. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Plaintiff testified that she had significant fatigue that required her to lay down for up to three hours every day. (Tr. 48, 49.) She also testified to joint pain in her hands, knuckles, knees, and feet. (Tr. 50.) Plaintiff testified that she had headaches three to four

- 13 -

times a month that lasted for about four hours. (Tr. 53-54.) The ALJ discounted Plaintiff's symptom testimony. (Tr. 27-28.)

### 1. Lack of Objective Support

The ALJ discounted Plaintiff's symptom testimony because he found that "the objective medical record fail[ed] to support the severity of the impairments and symptoms alleged." (Tr. 27.) After a claimant produces objective medical evidence of an underlying impairment, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray*, 554 F.3d at 1227. However, it is a relevant factor in determining the severity of a claimant's symptoms. *Rollins v. Massanri*, 261 F.3d 853, 857 (9th Cir. 2001). Therefore, the ALJ could consider a lack of corroborating evidence in determining the severity of Plaintiff's symptoms but could not reject Plaintiff's testimony solely on this basis.

### 2. Plaintiff Responded to with Treatment

The ALJ discounted Plaintiff's symptom testimony because he concluded that Plaintiff responded "well to conservative treatment." (Tr. 27.) The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3). The ALJ noted that medical records indicated that treatment had cured Plaintiff's hepatitis C and advanced fibrosis. (*Id.*) Plaintiff argues that evidence that her breast cancer, hepatitis C, or fibrosis responded well to treatment was irrelevant because she alleged disability based on her symptoms of fatigue and toxic neuropathy that continued after she successfully completed treatment for breast cancer. (Doc. 20 at 20.) The Court agrees that evidence of successful treatment of breast cancer, hepatitis C, and fibrosis did not undermine Plaintiff's reports of ongoing fatigue and pain.

### 3. Fatigue Testimony Inconsistent with the Record

At the 2016 administrative hearing, Plaintiff reported experiencing daily fatigue that required her to rest for several hours. (Tr. 49.) The ALJ rejected that testimony because he concluded the record included intermittent reports of fatigue that were inconsistent with Plaintiff's alleged daily fatigue. (Tr. 27; *see* Tr. 920, 968, 981, 1002, 1015, 1028, 1041,

- 14 -

1051 (reporting fatigue); *see* Tr. 908, 931, 947, 973, 1072, 1077 (denying fatigue).) Inconsistency between the medical records and a claimant's allegations is a permissible reason to find claimant not credible. *Batson*, 359 F.3d at 1196–97. However, the Court finds this rationale is not supported by substantial evidence in the record. The record indicates that Plaintiff did not report fatigue at every appointment the ALJ cited in this opinion. (Tr. 27.) However, she reported fatigue at numerous appointments and the records that the ALJ cites pertain to limited periods of time. (Tr. 908, 931, April 2015; Tr. 947, Oct. 2013; Tr. 973, July 2014; Tr. 1072, 1077, Oct. 2015).) Thus, the Court concludes that this rationale is insufficient.

### 4. Headache Testimony Inconsistent with the Record

Plaintiff testified that three to four times a month she had headaches that lasted four hours. (Tr. 53.) The ALJ discounted this testimony because it was inconsistent with the record. (Tr. 28.) The record indicates that Plaintiff complained of headaches once in August 2012 and again in August 2013. (Tr. 28 (citing Admin. Hrg. Exs. 3F at 5; 5F at 368; 9F at 1).) Additionally, the ALJ noted that Plaintiff reported "ocular migraines" between March and August 2015 (Tr. 28), but she later denied, or did not report, experiencing any headaches. (*Id.*) The records confirm that Plaintiff denied or did not report headaches during appointments on March 9, 2015 (Tr. 935), April 9, 2015 (Tr. 918-26), April 14, 2015 (Tr. 908), May 19, 2015 (Tr. 979, 980), September 28, 2018 (Tr. 1067), October 7, 2015 (Tr. 1072, 1077). Although the record does not reflect that Plaintiff reported headaches at every medical visit, this is not a valid reason to reject Plaintiff's testimony regarding chronic headaches. A condition may be intermittent but still disabling. *See Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980).

### 5. Daily Activities

The ALJ also discounted Plaintiff's symptom testimony because he found it inconsistent with her reported activities of daily living, which the ALJ found "illustrated a person more able bodied than alleged." (Tr. 28.) The ALJ noted that Plaintiff independently attended to her personal hygiene, prepared meals, washed dishes, did

laundry, cleaned her room, drove, and went grocery shopping. (Tr. 28.) Plaintiff also attended family events, went out to eat, called family members, and visited with friends. (*Id.*) Plaintiff managed her finances, read, watched television, helped care for her ailing mother, and worked part time from home. (*Id.*)

An ALJ may reject a claimant's symptom testimony if the severity of the alleged symptoms is incompatible with the claimant's daily activities. *See Burch*, 400 F.3d at 681. Daily activities may also be "grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Plaintiff argues that her daily activities are not a clear and convincing reason supported by substantial evidence for discrediting her symptom testimony. The ALJ did not make any finding as to how often Plaintiff engaged in the activities which the ALJ mentioned in his opinion or whether these activities were transferrable to a work setting. (Tr. 28.) Additionally, the ALJ did not explain why the cited daily activities were inconsistent with the severity of Plaintiff's reported symptoms. (*Id.*) Accordingly, Plaintiff's daily activities were not a legally insufficient reason for discounting her symptom testimony and the ALJ erred by discounting Plaintiff's symptom testimony based on her daily activities. *See Trevizo v. Berryhill,* 871 F.3d 664, 682 (9th Cir. 2017) (finding that ALJ erred by relying on claimant's childcare activities to discount the severity of claimant's symptoms when there were no details regarding those activities). Thus, the ALJ erred by failing to give legally sufficient reasons for discounting Plaintiff's symptom.

### C. The ALJ Erred at Steps Four and Five

The Commissioner concedes that the ALJ erred at steps four and five of the sequential evaluation process in determining that, based on the RFC that the ALJ assessed, Plaintiff either perform her past relevant work as a "clerk" and in determining that, alternatively, Plaintiff could perform other work that existed in the significant number in

the national economy. (Doc. 25 at 2-5.) Because the Commissioner concedes these errors, the Court does not further consider the ALJ's determination at steps four and five.

## VII. Remand for an Award of Benefits or Further Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the court reverses an ALJ's decision, the court remands "to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, when "it is clear from the record that the claimant is unable to perform gainful employment in the national economy," "remand for an immediate award of benefits is appropriate." *Id*.

Under the Ninth Circuit's credit-as-true standard, courts may credit as true improperly rejected medical opinions or claimant testimony and remand for an award of benefits if each of the following conditions is satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citing *Ryan*, 528 F.3d at 1202). If the "credit-as-true rule" is satisfied, the court may remand for further proceedings, instead of for an award of benefits, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that if her symptom testimony regarding her fatigue and headaches and Dr. Nadir's opinion are credited as true she is entitled to benefits. (Doc. 20 at 21.) Plaintiff argues that the ALJ's errors at steps four and five are moot because the ALJ's analysis as at steps four and five was based on a RFC that did not include the limitations identified in Dr. Nadir's opinion or in her symptom testimony. (*Id*.) Therefore, Plaintiff assets that further proceedings are not necessary and the Court should remand for an award of benefits. (*Id*.) The Commissioner asserts that further proceedings are necessary. (Doc. 25 at 5-9.)

Although the ALJ did not provide sufficient reasons for discounting Plaintiff's symptom testimony and Dr. Nadir's opinion, it is not clear from the record that she is entitled to benefits. *See Garrison*, 759 F.3d at 1019. The Court finds that "additional proceedings [could] remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). The ALJ's RFC did not account for the limitations identified in Plaintiff's symptom testimony or Dr. Nadir's opinion. However, the basis for Dr. Nadir's opinion is unclear. Dr. Nadir indicated "no" in response to whether the limitations he identified resulted "from objective, clinical, or diagnostic findings which have been documented either by [him] or elsewhere in [Plaintiff's] medical records." (Tr. 985.) Additionally, he did not identify Plaintiff's moderately severe "symptoms" that would result in Plaintiff being "[o]ff task 16-20% of an 8-hour day." (*Id.*) Also, he indicated that Plaintiff's "medical condition" would cause her to miss work miss work four to five days per month, but Plaintiff asserts that her even though her medical conditions (breast cancer, hepatitis) had been resolved her ongoing symptoms of fatigue and chronic joint pain were disabling. (*Id.*) Thus, further proceedings would be useful to clarify Dr. Nadir's opinion. Additionally, further proceedings would be useful to consider Plaintiff's symptom testimony as it relates to that opinion. Finally, further proceedings would be useful to consider Plaintiff's RFC and, if necessary, to obtain vocational expert testimony regarding whether Plaintiff can perform her past relevant work and, if not, whether she can perform other work that exists in the significant number in the national economy.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter is remanded for further proceedings consistent with this Order.

Dated this 28th day of January, 2019.

_____
Bridget S. Bade
United States Magistrate Judge